UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

WINEZ INTERNATIONAL INC.,

                       Plaintiff,

- against -

GENESIS IMPORT AND EXPORT INC.
and WAYNE SWABY,

                       Defendants.
----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

07 CV 1887 (FB)

On May 7, 2007, plaintiff Winez International Inc. commenced this action, pursuant to the Perishable Agricultural Commodities Act of 1930, as amended ("PACA"), 7 U.S.C. § 499(c), against defendants Genesis Import and Export Inc. ("Genesis") and Wayne Swaby, seeking to recover $522,504.50 owed to Winez for wholesale quantities of perishable agricultural commodities sold and delivered to Genesis during the period from May 6, 2003 through October 12, 2004.

Despite proper service of the Summons and Complaint, defendants Genesis and Swaby failed to file a timely Answer or otherwise respond in this action. On September 28, 2007, plaintiff filed a motion for a default judgment, and the Clerk of Court entered a default on October 1, 2007. On December 4, 2007, the action was referred to the undersigned to conduct an inquest and prepare a Report & Recommendation on the issue of damages.

On December 11, 2007, this Court issued an Order to the parties directing them to submit papers in connection with the plaintiff's request for damages. Thereafter, on February 8, 2008,

this Court held a hearing on the issue of damages at which time, plaintiff presented the testimony of Winston Richards, President of Winez. Defendants, however, failed to submit any response to plaintiff's submissions and failed to appear at the hearing.

Prior to the issuance of the Court's Report and Recommendation, defendant Swaby submitted a letter to the Court filed on March 7, 2008, briefly addressing plaintiff's allegations. The Court scheduled a conference, and defendant Swaby appeared before the Court and indicated his intention to move to vacate the default and to contest plaintiff's damages calculations. The Court informed Mr. Swaby that Genesis, as a corporation, could not appear in federal court without counsel and gave Mr. Swaby an opportunity to retain an attorney. In the interim, Mr. Swaby indicated an interest in attempting to resolve the matter with Winez, and several settlement conferences were held between the parties separately and with the assistance of the Court. Settlement discussions ultimately proved to be unsuccessful and on December 9, 2008, counsel for Winez submitted a letter indicating that despite explicit instructions from the Court, Mr. Swaby had failed to contact counsel with a proposed payment schedule. On December 11, 2008, Mr. Swaby sent a letter to the Court indicating that he had been unable to obtain counsel but that he was willing to pay a sum to settle the case. This amount being unacceptable to plaintiff, and defendants never having moved to have the default vacated, the Court proceeds to determine the issue of damages.

## FACTUAL BACKGROUND

Plaintiff Winez is a Florida corporation engaged in the business of selling produce, including fruits and vegetables, in interstate commerce, and is a licensed dealer under PACA.

(Compl. ¶ 4; Pakulsky Cert. ¶ 6).[1] Defendant Genesis is a New York corporation, located at 322 Quincy Street in Brooklyn, New York. (Compl. ¶ 6; Pakulsky Cert. ¶ 7). Defendant Swaby is an officer and director of Genesis, which is licensed under the trust provisions of PACA as a dealer and commission merchant. (Compl. ¶¶ 5-6; Pakulsky Cert. ¶ 8).

According to the testimony of Winston Richards, President of Winez since 1994, Winez is an importer of tropical produce, such as yams, peppers, grapefruit and pumpkins. (Tr.[2] at 10-11). Defendant Swaby, a distributor of tropical produce and the owner of Genesis, contacted Winez to arrange for the shipment of produce with payment due for each shipment within 30 days of delivery. (Id. at 12-13). On or about May 6, 2003, plaintiff entered into an agreement to sell and deliver to defendants certain produce pursuant to Winez's Standard Sales Terms as set forth on the face of each Winez invoice. (Compl. ¶ 8; Pakulsky Cert. ¶ 10).[3] Thereafter, during the period from May 6, 2003 through October 12, 2004, plaintiff made forty (40) deliveries of produce to defendants pursuant to defendants' requests. (See Letter of Andrew Squire, Esq., dated Feb. 7, 2008, and invoices attached thereto; Compl. ¶ 8; Pakulsky Cert. ¶ 10). Defendants accepted the shipments and resold the produce. (Compl. ¶ 11; Pakulsky Cert. ¶ 9).

According to Mr. Richards, Winez generated an invoice for each shipment at the time it

---

[1] Citations to "Compl." refer to the Complaint filed in this action on May 7, 2007. Citations to "Pakulsky Cert." refer to the Certification of Lee Pakulsky In Lieu of Affidavit, dated September 28, 2007.

[2] Citations to "Tr. at " refer to pages in the transcript of the inquest hearing held before this Court on February 8, 2008.

[3] The Court notes that in paragraph 10 of the Pakulsky Certification and in the Wherefore clause of the Certification, there are references to entities other than Genesis and Winez. These appear to be typographical errors copied from a filing in another case, and plaintiff's counsel corrected them at the hearing. (See Tr. at 7-9).

3

left the warehouse. (Tr. at 13). The invoices were given to Mr. Swaby by the truck driver at the time of delivery, along with a bill of lading that was generated for each shipment, describing the items of produce being delivered. (Id. at 13-14). The driver would obtain Mr. Swaby's signature on the bill of lading at the time of delivery and then return the signed bill of lading to Winez. (Id.)

During the course of Winez's relationship with Genesis, Mr. Swaby complained about certain shipments and prices and the parties agreed upon certain credits to be issued to Genesis. (Id. at 17-20) The credits were noted on the invoices. (Id.)

According to plaintiff, despite numerous demands for payment made between October 2004 and April 2007, defendants failed to pay the full $528,340.50 owed for shipments of produce received. (Magarino Aff.[4] ¶ 3 (asserting an invoiced amount of $528,340.50, reduced to $446,774.50 due to payments and credits made); but see Compl. ¶ 11 (asserting an amount owed of $522,504.50); Pakulsky Cert. ¶ 13 (same)). In two submissions to the Court filed on March 7 and March 18, 2008 ("Defs.' Recs."), defendant Swaby indicates that there were additional credits and payments not reflected in plaintiff's records. In a supplemental Certification in Lieu of Affidavit by Lee Pakulsky submitted to the Court by plaintiff on March 12, 2009 ("Pakulsky Supp. Cert."), plaintiff agrees to accept Mr. Swaby's accounting, which included payments and credits totaling $284,780.00. Subtracting these payments and credits yields a total of $243,560.50 allegedly owed to plaintiff. Plaintiff also seeks $8,000 in attorney's fees and collection costs, $265 in court costs and disbursements, and $137,157.30 in prejudgment interest

---

[4]Citations to "Magarino Aff." refer to the Affidavit of Maria C. Magarino, Plaintiff's Bookkeeper in Support of Determination of Principal Unpaid Balance Owed by Defendants for Produce Furnished by Plaintiff, dated March 4, 2008.

covering the period from October 12, 2004, the date of the last invoice, through September 28, 2007, the date plaintiff's motion for a default judgment was filed. (Pakulsky Cert. at 4).

Plaintiff commenced this action seeking to recover the amounts owed as a beneficiary of a PACA trust, including all produce-related assets and funds co-mingled from other sources. (Compl. ¶ 10). On May 7, 2007, a process server, Gene Lombardi, served copies of the Summons and Complaint on defendants at the Genesis offices located at 322 Quincy Street, Brooklyn, New York. A default was entered on October 1, 2007, and the case was referred to the undersigned to conduct an inquest on damages.

## DISCUSSION

A. <u>Default Judgment</u>

Rule 55(a) of the Federal Rules of Civil Procedure provides: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process in which first a default, and then a default judgment, is entered. See <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95 (2d Cir. 1993). The court clerk automatically enters the default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure by noting the party's default on the clerk's record of the case. <u>See id.</u> After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. <u>See</u> Fed. R. Civ. P. 55(b). If the amount of damages must be ascertained in order for default judgment to be entered, the court may conduct a hearing. See Fed. R. Civ. P.

5

55(b)(2); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95.

Here, plaintiff submitted a request for entry of default and default judgment on 2007. The Clerk of Court entered a default on October 1, 2007. In determining whether a default judgment should enter, courts have cautioned that a default judgment is an extreme remedy that should only be granted as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance the interest in expediting cases with the court's responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95–96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and doubts should be resolved in favor of the defaulting party. Id. at 96. Accordingly, the plaintiff is not entitled to a default judgment as a matter of right, simply because the defendants are in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts are required to "supervise default judgments with extreme care to avoid miscarriages of justice," and ordering an inquest to determine damages).

The court possesses significant discretion and may consider a number of factors in deciding whether or not to grant a default judgment, including whether the grounds for default are clearly established, and the amount of money potentially involved. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (citations omitted). The greater the amount of money involved, the less justification there is for entering the default judgment. Id. Additionally, a court may consider whether material issues of fact remain, whether the facts

6

alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) (discussing factors); Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, 10A Fed. Practice & Procedure, §§ 2685, 2688 (3d ed. 1998).

When a defendant defaults, he is deemed to have admitted every well-pleaded allegation of the complaint. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995); Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986). Having reviewed the prior proceedings in the current case, this Court respectfully recommends that default judgment be entered. The Complaint clearly sets forth facts establishing a claim that the defendants violated various provisions of PACA.

B. PACA

In 1930, Congress enacted PACA to regulate the sale and marketing of produce in interstate commerce. See American Banana Co., Inc. v. Republic Nat'l Bank of New York, 362 F.3d 33, 36 (2d Cir. 2004) (citing H.R. Rep. No. 98-543, at 3 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 406; Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1066 (2d Cir. 1995)). Congress noted that PACA was intended "'to encourage fair trading practices in the marketing of perishable commodities by suppressing unfair and fraudulent business practices . . . and providing for collecting damages from any buyer or seller who fails to live up to his contractual obligations.'" American Banana Co., Inc. v. Republic Nat'l Bank of New York, 362 F.3d at 36 (quoting H.R. Rep. No. 98-543, at 3); see also Frio Ice, S.A. v. Sunfruit, Inc., 918 F.2d

154, 155-56 (11th Cir. 1990). Among other provisions, PACA requires that all produce dealers, including commission merchants and brokers or "buyers" who place perishable commodities in interstate or international commerce be licensed. See 7 U.S.C. § 499c; American Banana Co., Inc. v. Republic Nat'l Bank of New York, 362 F.3d at 36. The Act also provides various remedies when there is a violation of PACA provisions. See 7 U.S.C. § 499c.

In 1984, Congress amended PACA to establish a nonsegregated statutory trust that produce dealers are required to maintain by holding any assets related to that produce in trust until full payment is made to the seller of such produce. See 7 U.S.C. § 499e(c)(2); Mid-Valley Produce Corp. v. 4-XXX Produce Corp., 819 F. Supp. 209, 211 (E.D.N.Y. 1993). The purpose in adding Section 499e(c)(2) was to provide "greater protection" to produce sellers who often found themselves in the position of "unsecured creditors of buyers whose creditworthiness could not be verified." American Banana Co., Inc. v. Republic Nat'l Bank of New York, 362 F.3d at 37. The provision "impresses a 'non-segregated "floating" trust' on the commodities and their derivatives," and permits the buyers to commingle their PACA trust assets with their other assets. Id. at 38 (citing 7 C.F.R. § 46.46(b)). The trust is formed at the moment the produce is shipped to the buyer and remains in effect until the seller is paid in full. See 7 C.F.R. § 46.46(c)(1); In re Kornblum & Co., 81 F.3d 280, 286 (2d Cir. 1996); Horizon Marketing v. Kingdom Intern. Ltd., 244 F. Supp. 2d 131, 135 (E.D.N.Y. 2003).

Under PACA, produce dealers are required to make "full payment promptly" for any produce received from produce sellers. See 7 U.S.C. § 499b(4). The regulations promulgated by the Secretary of the USDA define prompt payment as payment within ten days after acceptance of the produce unless the parties stipulate otherwise in a written agreement. 7 C.F.R. § 46.2(aa)

8

(1990); see Frio Ice, S.A. v. Sunfruit, Inc., 918 F.2d at 156; Mid-Valley Produce Corp. v. 4-XXX Produce Corp., 819 F. Supp. at 209. Parties are, however, permitted to agree to other payment periods so long as the terms do not exceed thirty days. 7 C.F.R. § 46.46(e)(3); see American Banana Co., Inc. v. Republic Nat'l Bank of New York, 362 F.3d at 43. If the buyer fails to make prompt payment, the seller has two potential remedies: (1) it may file a lawsuit in "any court of competent jurisdiction," 7 U.S.C. § 499e(b), which includes the district courts of the United States, 7 U.S.C. § 499e(c)(5); or (2) it may file a complaint with the Secretary of the USDA within nine months after the claim accrues. 7 U.S.C. § 499e(b); 7 C.F.R. § 47.3(a); see also American Banana Co., Inc. v. Republic Nat'l Bank of New York, 362 F.3d at 36 n.2. The benefit of the trust protection is lost unless written notice of intent to preserve this benefit is provided to the buyer. 7 U.S.C. § 499e(c)(3). Such notice must "set forth information in sufficient detail to identify the transaction subject to the trust." Id. A seller may preserve the benefit of the trust through "ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust." 7 U.S.C. § 499e(c)(4).

C. Analysis

As an initial matter in this case, plaintiff Winez and defendant Genesis are PACA licensees and plaintiff's invoices referencing the shipments of produce at issue all contain the specific language prescribed by PACA to preserve Winez's interest in the trust. (Pakulsky Cert. Ex. E). According to the testimony of Mr. Richards, which has not been controverted and which the Court credits, these invoices were provided to defendants upon delivery of the produce. (Tr. at 13). Moreover, at this point, there appears to be no question that plaintiff is entitled to receive

some amount sought from defendants for their failure to pay in full for all shipments received. Defendants have defaulted in this action and thus have not challenged plaintiff's entitlement to some payments.

Although the Code of Federal Regulations explicitly establishes a 10-day period within which the PACA seller must be paid, the regulation permits the parties by written agreement to extend the period up to 30 days without negating the PACA trust provisions. 7 C.F.R. §§ 46.2(aa)(5); 46.46(e)(1) & (2); Mid-Valley Produce Corp. v. 4-XXX Produce Corp., 819 F. Supp. at 211. The Second Circuit has made it clear that any written agreement to extend payment terms beyond the thirty-day period provided by the regulations causes plaintiff to forfeit PACA trust protection. See American Banana Co., Inc. v. Republic Nat'l Bank of New York, 362 F.3d at 47; Mid-Valley Produce Corp. v. 4-XXX Produce Corp., 819 F. Supp. at 211 (noting that an agreement to extend the period beyond 30 days "negate[s] those provisions"). Here there is no evidence of any written contract extending payment beyond the thirty days. Thus, as an initial matter, plaintiff has satisfied its burden of establishing that it complied with the statutory requirement to provide notice of its intent to preserve the PACA trust. Nor is there any evidence of an oral modification to these written contracts, see American Banana Co., Inc., 362 F.3d at 46-47 (holding that an oral agreement to extend the time period for payment beyond thirty days also forfeits trust protection: "a failure to reduce to writing an agreement that violates PACA, should not result in the preservation of the trust, where the same agreement, if memorialized, would have resulted in forfeiture of such protection"); indeed, the defendants bear the burden of proving such a modification under general principles of contract law, and given their default, the Court concludes that no modification occurred.

Moreover, it is beyond dispute that defendants are in default. They failed to respond to the Complaint or the motion for default judgment. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (holding that "[the defendant's] default is crystal clear - - it does not even oppose this motion"). Although Mr. Swaby appeared before the Court and indicated his desire to move to vacate the default, he has not so moved in the 17 months since the default was entered, nor has he done so in the 11 months since his first court appearance. Moreover, except for several letters setting forth charts of alleged payments made to Winez, he has not submitted any papers in connection with the damages request otherwise challenging plaintiff's entitlement to receive delinquent payments.

As to defendant Genesis, a failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court pro se (i.e., representing themselves, without an attorney). See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (noting the well settled law that a corporation cannot appear without an attorney); see also Jones v. Niagara Frontier Transp. Auth, 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only). As to defendant Swaby, who has been sued *individually*, he may proceed pro se and thus, to the extent that he has submitted papers in connection with the inquest, this Court has considered them in connection with the computation of damages.

Given that nothing has been presented to the Court to challenge the veracity of plaintiff's claim that defendants have failed to comply with their PACA obligations, the Court will proceed to evaluate the question of damages.

D. Calculation of Damages

When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); see also Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). However, unlike allegations pertaining to liability, allegations in connection with damages are not deemed admitted in the context of a default judgment. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. The plaintiff must still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages. Id. Indeed, "'while a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d. Cir 1974)).

1. Unpaid Invoices

Plaintiff submitted copies of all invoices at issue at the inquest hearing and subsequently submitted a chart summarizing them which was prepared by Winez's bookkeeper. (Magarino Aff.). According to these invoices, along with the testimony of Mr. Richards, the total amount invoiced was $528,340.50,[5] an amount defendants have not disputed. Defendants have submitted a chart listing payments and credits allegedly made (Defs.' Recs.), and plaintiff accepts

---

[5] Plaintiff initially alleged that defendants owed $522,504.50. (Compl. ¶ 11; Pakulsky Cert. ¶ 13). Since plaintiff never explained how it arrived at this number, the Court will disregard it and rely instead on the records submitted by the parties.

12

defendants' records as accurate. (Pakulsky Supp. Cert. ¶ 6). According to these records, the total amount of payments and credits made was $284,780.00. Subtracting the conceded amount of payments and credits from the total amount reflected in the invoices, the amount defendants owe, therefore, is $243,560.50.

2. Attorneys' Fees and Collection Costs

Plaintiff seeks an award of "attorneys' fees and collection costs in the reasonable sum of $8,000." (Pakulsky Cert. ¶ 13). Although PACA does not explicitly require an award of attorneys' fees or collection costs, they may be awarded where "'the parties' contracts include a right to attorneys' fees.'" Watermelon Express v. Marine Park Farmer's Mkt., No. 05-CV-4649, 2007 WL 4125105, at *1 (E.D.N.Y. Nov. 16, 2007) (quoting Coosemans Specialties, Inc. v. Gargiulo, 485 F.3d 701, 709 (2d Cir. 2007)). Here, the language on plaintiff's invoices provides for payment of "legal fees" and "collection costs" by the buyer where the invoice "goes to collection." (Pakulsky Cert. Ex. E). Plaintiff is therefore entitled to attorneys' fees and collection costs pursuant to its contracts with defendants.

To support such an award, however, a party is required to submit contemporaneous billing records. See John Georgallas Banana Distribs. of N.Y. v. N&S Tropical Produce, No. 07 CV 5093, 2008 WL 2788410, at *6 (citing N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983)). Here, plaintiff has submitted no documentation supporting this request whatsoever. In fact, no explanation is provided beyond the language quoted above. It is therefore respectfully recommended that plaintiff's request for attorneys' fees and collection costs be denied without prejudice and that plaintiff be permitted to make an application to the Court,

with appropriate supporting documentation, renewing its request.

3. Prejudgment Interest

In its motion for a default judgment, plaintiff also requests an award of prejudgment interest. (Pakulsky Cert. at 4). Plaintiff requests interest on the sum of $530,504.50 for the period from October 12, 2004, the date of the last invoice, through September 28, 2007, the date plaintiff's motion was filed, for a total of $137,157.30 (Id.) In making this request, plaintiff appears to be seeking interest on the $522,504.50 in principal alleged to be owed plus interest on the $8,000 requested in fees and costs.[6] Although plaintiff has not specified the interest rate to be applied or the basis for that rate, the number requested corresponds to an annual interest rate of 8.7%.

Although PACA does not explicitly provide for an award of prejudgment interest, where the parties' contract provides for interest, courts may enforce such a provision. See Argi Exotic Trading v. New Man Designed Sys., No. 07 CV 0049, 2008 WL 2397565, at *3 (E.D.N.Y. July 15, 2008). Even in the absence of a contractual provision, it is within the district court's discretion to make such an award. See Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d at 1071-72 (holding that "[t]he decision whether to grant prejudgment interest and the rate used if such interest is granted 'are matters confided to the district court's broad discretion'"). "The Second Circuit has recognized that pre-judgment interest may be permitted in the absence of express statutory authorization 'when the awards were fair, equitable and necessary to compensate

---

[6]It is unclear why plaintiff feels justified in requesting interest on the attorney's fees or why the interest should extend back to the date of the last invoice when the fees were not incurred until much later.

the wronged party fully.'" Garden City Boxing Club, Inc. v. Rojas, No. 05 CV 1047, 2006 WL 3388654, at *9 (E.D.N.Y. Nov. 21, 2006) (quoting Wickham Contracting Co., Inc. V. Local Union No. 3, 955 F.2d 831, 836 (2d Cir. 1992)). Prejudgment interest, however, is generally awarded only in "exceptional cases." American Honda Motor Co., Inc. v. Two Wheel Corp., 918 F.2d 1060, 1064 (2d Cir. 1990).

Here, plaintiff has provided no justification for awarding prejudgment interest or for the 8.7% interest rate it appears to be proposing, and there is no evidence that the parties had any agreement which provided for interest. Under the circumstances, therefore, it is respectfully recommended that plaintiff's request for prejudgment interest be denied. See Watermelon Express v. Marine Park Farmer's Mkt., No. 05 CV 4649, 2007 WL 4125105, at *1 (E.D.N.Y. Nov. 16, 2007) (denying request for prejudgment interest as part of PACA default judgment where plaintiff failed to explain why interest award was warranted).

### 4. Court Costs and Disbursements

Finally, plaintiff requests an award of $265 for court costs and disbursements. Since the record reflects plaintiff's payment of this court's $350 filing fee, it is respectfully recommended that plaintiff's requested award of $265 be granted.

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiff be awarded damages in the amount of $243,825.50, representing $243,560.50 in unpaid invoices and $265 in court costs and disbursements. It is further recommended that plaintiff be permitted to supplement its request for

fees and costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
March 31, 2009

Cheryl L. Pollak
United States Magistrate Judge